UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELI RICHARD GAME,

                Plaintiff,

v.

                Case # 16-CV-6234-FPG

                DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

Eli Richard Game ("Game" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On March 23, 2013 Game protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 156-16. He alleged that he had been disabled since June 1, 2010 due to mild cerebral palsy, Tetralogy of Fallot, Asperger's Syndrome, and epilepsy. Tr. 174. On March 31, 2015, a hearing was held before Administrative Law Judge Elizabeth W. Koennecke ("the ALJ") at which Game and a vocational expert ("VE") appeared and testified.

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]    References to "Tr." are to the administrative record in this matter.

Tr. 39-48. On April 16, 2015, the ALJ issued a decision finding that Game was not disabled within the meaning of the Act. Tr. 19-33. On February 9, 2016, the Appeals Council denied Game's request for review. Tr. 1-7. Thereafter, Game commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Game v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I. The ALJ's Decision**

The ALJ's decision analyzed Game's claim for benefits under the process described above. At step one, the ALJ found that Game had not engaged in substantial gainful activity since the application date. Tr. 21. At step two, the ALJ found that Game has a mental impairment, which constitutes a severe impairment. Tr. 21-23. At step three, the ALJ found that this impairment did not meet or medically equal an impairment in the Listings. Tr. 23-24

Next, the ALJ determined that Game retained the RFC to perform light work[3] with additional limitations. Tr. 25-31. Specifically, the ALJ found that Game can push, pull, lift, and/or carry 30 pounds occasionally and 10 pounds frequently; has an unrestricted ability to sit, stand, and walk; can occasionally squat, twist, turn, bend, kneel, crawl, reach overhead, finger, and use his hands for fine manipulation; and must avoid hazards, moving machinery, and working at heights. Tr. 25. The ALJ also found that Game is limited to simple work with limited interaction with coworkers and supervisors; can understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks; must avoid work requiring complex interaction or joint efforts to achieve work goals and interaction with the public; and can handle simple work-related stress, *i.e.*, he can make simple decisions related to completing tasks and can work in a stable, unchanging work environment. *Id.*

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

4

At step four, the ALJ indicated that Game had no past relevant work. Tr. 31. At step five, the ALJ relied on the VE's testimony and found that Game can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 31-32. Specifically, the VE testified that Game could work as a shipping and receiving weigher, router, and route aid. Tr. 32. Accordingly, the ALJ concluded that Game was not "disabled" under the Act. Tr. 32-33.

## II.     Analysis

Game argues that remand is required because the ALJ erred when she found that he did not meet or medically equal Listing 12.10: Autistic Disorder and Other Pervasive Developmental Disorders. ECF No. 8-2, at 8-10. The Commissioner maintains that the ALJ properly evaluated Listing 12.10 and that her related finding was supported by substantial evidence. ECF No. 10-1, at 12-15.

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's RFC and proceeds to the next steps of the analysis. 20 C.F.R. § 404.1520(e)-(f).

To match an impairment in the Listings, the claimant's impairment "must meet all of the specified medical criteria" of a listing. *Barber v. Comm'r of Soc. Sec.*, 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a

5

listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citing 20 C.F.R. § 416.926(a)).

Listing 12.10 encompasses autistic disorder and other pervasive developmental disorders. 20 C.F.R. § 404 Subpt. P, App. 1, § 12.10. The Listing is met when the criteria of both Paragraphs A and B are satisfied. For autistic disorders, the Paragraph A requires all of the following: qualitative deficits in reciprocal social interaction; qualitative deficits in verbal and nonverbal communication and in imaginative activity; and markedly restricted repertoire of activities and interests. *Id.* at § 12.10A. The Paragraph B criteria must also be met and requires two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation each of extended duration. *Id.* at § 12.10B.

Here, the ALJ determined at step three that Game did not meet the criteria of Listing 12.10. Tr. 23-24. The ALJ's determination did not discuss the Paragraph A criteria, however, the criteria of both Paragraphs A and B must be established to satisfy the Listing. Thus, any error to specifically address the Paragraph A criteria is harmless if the ALJ properly assessed the Paragraph B criteria and properly concluded that Game did not meet those criteria. *See Barber*, 2016 WL 4411337, at *3.

The ALJ considered the Paragraph B criteria by examining each of the categories outlined above. Tr. 23-24. In activities of daily living, the ALJ found that Game had no restriction. Tr. 23. The ALJ supported this conclusion by noting that Game attended college, was planning on earning a degree in early childhood development, and reported at a consultative exam that he cooked, cleaned, washed dishes, and cared for his personal hygiene. *Id.* (citing Tr. 399, 615).

In social functioning, the ALJ found that Game has no more than moderate difficulties. Tr. 23. The ALJ supported this conclusion by noting that Game was pleasant and cooperative at an evaluation in June 2012. *Id.* (citing Tr. 585). The ALJ also pointed out that at a consultative examination in May 2013, Game was cooperative with good social skills, was neat and well groomed, maintained appropriate eye contact, and had adequate expressive and receptive language skills. *Id.* (citing Tr. 614).

As to concentration, persistence, or pace, the ALJ concluded that Game has only mild difficulties. Tr. 24. The ALJ supported this conclusion by noting that during a consultative examination, Game's attention, concentration, and recent and remote memory skills were intact. *Id.* (citing Tr. 614). Game could complete serial threes accurately, recall three of three objects immediately and after five minutes, and repeat six digits forward and three digits backward. *Id.*

As to episodes of decompensation, the ALJ concluded that Game had experienced no such episodes. Tr. 24. The ALJ noted that Game had never been hospitalized for psychiatric treatment and that his attorney did not assert that Game had any episodes of decompensation. *Id.*

The ALJ also supported her step three decision by relying on the opinion of a State Agency psychological consultant. Tr. 24. Upon reviewing the evidence of record, the consultant concluded that Game's impairment did not meet or medically equal Listing 12.10 and specifically noted that the Paragraph B criteria had not been satisfied. Tr. 24 (citing Tr. 52).

After considering the ALJ's decision and reviewing the record, the Court finds that the ALJ did not err. Although Game points to minimal evidence indicating that he had poor daily living and socialization skills, ECF No. 8-2, at 4-5 (citing Tr. 587, 658), the ALJ was entitled to resolve any conflicts in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation

omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). The ALJ's step three decision is well-reasoned and supported by substantial evidence, and the Commissioner's decision is therefore affirmed.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 17, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court